# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHLEEN JANE CROW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-0550-D |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant.[1] | ) |

## REPORT AND RECOMMENDATION

Plaintiff Kathleen Jane Crow brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Timothy DeGiusti has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 10, hereinafter "R.__"). The parties have briefed their positions and the case is now ready for decision. For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

---

[1] The current Acting Administrator is substituted as Defendant pursuant to Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

Plaintiff protectively filed her application for SSI on September 24, 2009, alleging a disability onset date of April 30, 2009. R. 269-72, 306-08. Following denial of her applications initially and on reconsideration, Plaintiff and her attorney attended a hearing before an Administrative Law Judge ("ALJ") on January 14, 2015. *See* R. 35-77, 159-62, 166-68. The ALJ issued an unfavorable decision on April 17, 2015, and the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-3, 9-26; *see also* 20 C.F.R. § 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

A person is "disabled" within the meaning of the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920(a)(4).

Additional analysis is required, however, when an ALJ finds that a claimant is "disabled" but there is medical evidence of drug addiction or alcoholism ("DAA") in the record. 20 C.F.R. § 416.935(a). In that circumstance, the ALJ must determine whether the DAA is a material contributing factor to the claimant's disability, with the "key factor" being whether the ALJ "would still find [the claimant] disabled if [he or she] stopped using

2

drugs or alcohol." 20 C.F.R. § 416.935(b)(1). The ALJ must evaluate which of the claimant's disabling physical and/or mental limitations would remain if the claimant stopped using drugs or alcohol, and then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2). If the ALJ finds that a claimant's remaining limitations would not be disabling, then the DAA is a material contributing factor to the claimant's disability and the ALJ must conclude that the claimant is not disabled. 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(b)(2)(i). If the ALJ finds that the remaining limitations would in and of themselves be disabling, then the ALJ must conclude that the claimant is disabled. 20 C.F.R. § 416.935(b)(2)(ii).

In the decision at issue here, the ALJ at step one found that Plaintiff had not engaged in substantial gainful activity since September 24, 2009, the application date. R. 12. At step two, the ALJ determined that Plaintiff had severe impairments of fibromyalgia, osteoarthritis, chronic obstructive pulmonary disease, sleep apnea, major depressive disorder, anxiety disorder, and history of polysubstance abuse. R. 12. At step three, the ALJ determined that Plaintiff's "mental impairments, including the substance use disorders," met the medical criteria of sections 12.04, 12.06, and 12.09, presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 18. These impairments are Affective Disorders, Anxiety Related Disorders, and Substance Addiction Disorders, respectively. 20 C.F.R. pt. 404, subpt. P app. 1 §§ 12.04, 12.06, 12.09.

Having found that Plaintiff's impairments met at least one Listing (and thus that Plaintiff was disabled) when the effects of substance abuse were considered, the ALJ then

3

considered whether Plaintiff's DAA was a material contributing factor to Plaintiff's disability. *See* 20 C.F.R. § 416.935(a). To do so, the ALJ re-evaluated Plaintiff as if she had stopped substance abuse. *See* R. 19-24. At the reconsidered step two, the ALJ found that if Plaintiff "stopped the substance use, the remaining limitations would cause more than a minimal impact on [Plaintiff's] ability to perform basic work activities; therefore [Plaintiff] would continue to have a severe impairment or combination of impairments." R. 19. At the reconsidered step three, the ALJ found that, if Plaintiff "stopped substance use," her remaining severe impairments or combination of impairments would not meet or medically equal any impairments in the Listings. R. 19-21.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her remaining impairments. R. 21-25. The ALJ found that if Plaintiff "stopped the substance use," she would have the RFC to perform "light work," subject to additional specifications and limitations:

> [Plaintiff] cannot climb ladders, ropes, or scaffolds and cannot be exposed to work at unprotected heights or around workplace hazards. [Plaintiff] is able to understand, remember, and carry out simple instructions for routine tasks and is able to interact occasionally with coworkers and supervisors, but not with the general public.

R. 21; *see* 20 C.F.R. § 416.967(b) (defining "light work").

At step four, the ALJ found that if Plaintiff "stopped the substance use," she would be unable to perform her past relevant work. R. 25. At step five, relying on the testimony of a vocational expert, the ALJ found that Plaintiff—considering her age, education, work experience, and RFC as it would exist if Plaintiff "stopped the substance use"—would be able to perform the requirements of representative occupations such as final inspector,

4

electronics worker, and remnant sorter. R. 25-26. On the basis of those occupations, the ALJ found that if Plaintiff "stopped substance use, she would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." R. 26.

The ALJ then concluded that "[t]he substance use disorder is a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if she stopped the substance use." R. 26. Accordingly, the ALJ found that Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision. R. 26.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the ALJ's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed

5

applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ISSUES ON APPEAL

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because (1) there was no evidence of a period of abstinence on which the ALJ could rely to determine that DAA was material; (2) the ALJ did not order a consultative exam to assist in determining whether DAA was material; (3) the ALJ did not consider whether DAA impacted Plaintiff's physical impairments; and (4) the ALJ relied on "stale" medical opinions. Pl.'s Br. (Doc. No. 12) at 6-8.

## ANALYSIS

As noted above, an individual "shall not be considered to be disabled" if drug addiction or alcoholism is "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J); 20 C.F.R. § 416.935(a). The SSA has published policy interpretation rulings, the latest version of which is Social Security Ruling 13-2p, setting forth the process to be followed in conducting a DAA materiality inquiry. SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013). This policy instructs that, when the claimant has at least one other medically determinable impairment that could be disabling by itself, the ALJ must determine whether the other impairment might improve to the point of nondisability if the claimant were to stop using drugs or alcohol. SSR 13-2p, 2013 WL 621536, at *7.

With respect to co-occurring mental disorders, such as Plaintiff's depression and anxiety, the SSA acknowledges that it knows of no research data it can use to "predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol." *See id.* at *9. Instead, the SAA "make[s] this finding based on the evidence in the claimant's case record." *Id.* at *7. To make a finding that DAA is material in such a case, then, the ALJ "must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA." *Id.* at *9. In contrast to cases involving physical impairments, the ALJ is not permitted to "rely exclusively on medical expertise and the nature of a claimant's mental disorder" to support a finding that DAA is material. *Id.*

  A. *Substantial evidence supports the ALJ's determination that DAA was material*

  1. <u>Evidence of a period of abstinence is not required to determine DAA for a claimant's co-existing mental impairments</u>

Plaintiff argues that the ALJ erred in finding that DAA was a contributing factor material to the determination of disability because the record did not contain evidence of a period of abstinence. Pl.'s Br. at 5-7. In making her argument, Plaintiff relies on an SSA teletype issued in 1996 and cases interpreting the same. *See* Pl.'s Br. at 4-5. That teletype, however, is now obsolete and it is the SSA's most recent policy interpretation ruling, SSR 13-2p, that provides current instruction on conducting a DAA materiality inquiry. *See* SSR 13-2p, 2013 WL 621536, at *1. SSR 13-2p was in effect when the ALJ issued her decision in January 2015.

In contrast to Plaintiff's argument that the ALJ's DAA determination was flawed because the ALJ "could not point to a period of abstinence," SSR 13-2p does not expressly require a period of abstinence in order to find DAA material in cases of co-occurring mental impairments. *Compare* Pl.'s Br. at 6, *with* 2013 WL 621536, at *4. Instead, the ruling requires "evidence in the case record" that establishes the materiality of DAA. SSR 13-2p, 2013 WL 621536, at *9. Additionally, in discussing how the SSA considers periods of abstinence, the ruling includes a discussion of "all cases in which we must consider periods of abstinence," thus indicating there are some cases in which consideration of periods of abstinence is not required (*e.g.*, those cases in which there is no evidence of such periods). *See id*. at *12. Moreover, other provisions in the SSR undermine Plaintiff's argument that the existence of a period of abstinence is required for a materiality determination in cases involving co-occurring mental impairments. For instance, section 5(a) states that "[t]here does not have to be evidence from a period of abstinence for the claimant to meet his or her burden of proving disability." *Id*. at *4. It would not be logical, then, for the SSA to require such evidence in order for an ALJ to find that a claimant had *not* met his or her burden of proving disability. And section 5(f)(ii) states that, in determining materiality, the ALJ "must *project* the severity of the claimant's other impairment(s) in the absence of DAA." *Id.* at *7 (emphasis added). The undersigned finds that SSR 13-2p does not mandate evidence of a period of abstinence as a prerequisite to finding materiality. *See, e.g.*, *Chanda v. Colvin*, 2:15-CV-52-JHR, 2015 WL 6123752, at *5-6 (D. Me. Oct. 15, 2015) (concluding that, under SSR 13-2p, a period of abstinence is not required for finding DAA material to co-existing mental impairments, and citing cases "rebuff[ing] arguments

8

that either SSR 13-2p or EM–96200, an August 30, 1996, emergency message issued by the commissioner to adjudicators to provide guidance on DAA issues that was superseded by SSR 13-2p, requires that there be a period of abstinence to find DAA material in cases with co-occurring mental impairments"). Accordingly, the undersigned rejects Plaintiff's argument that the ALJ's DAA determination was not supported by substantial evidence because there was no evidence of a period of abstinence.

    2. The ALJ did not need to order a consultative examination

Plaintiff relatedly argues that, because the record did not contain evidence of a period of abstinence, it was error for the ALJ not to order a consultative examination. Pl.'s Br. at 6-7. As SSR 13-2p makes clear, the SSA will order a consultative examination "primarily to help establish whether a claimant who has no treating source records has a mental disorder(s) in addition to DAA." SSR 13-2p, 2013 WL 621536, at *9. Here, not only did Plaintiff have treatment providers who diagnosed Plaintiff with co-existing mental disorders, the record already contained a consultative examination indicating that Plaintiff had co-existing mental disorders. *See, e.g.*, R. 411, 463-66.

In explaining the duty placed upon an ALJ regarding record development, the Tenth Circuit has emphasized the Commissioner "has broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997); *see also Duncan v. Colvin*, 608 F. App'x 566, 570 (10th Cir. 2015). Considering the relevant regulation's older version, the Tenth Circuit explained that a consultative examination is "often required" in the following circumstances: (1) "there is a direct conflict in the medical evidence requiring resolution"; (2) "the medical evidence in the record is inconclusive"; or

(3) "additional tests are required to explain a diagnosis already contained in the record." *Hawkins,* 113 F.3d at 1166 (citing prior version of regulation governing disability insurance benefits, which is substantially similar to the regulation governing SSI). In its current form, the regulation governing consultative examinations in SSI cases prescribes:

> (b) Situations that may require a consultative examination. We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim. Some examples of when we might purchase a consultative examination to secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis, include but are not limited to:
>
> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources; or
>
> (4) There is an indication of a change in your condition that is likely to affect your ability to work . . . but the current severity of your impairment is not established.

20 C.F.R. § 416.919a(b).

Under these regulatory guidelines, Plaintiff's case did not warrant a consultative examination because, even without evidence of a period of abstinence, "the evidence as a whole" was sufficient to allow the ALJ to make a determination on Plaintiff's claim and, specifically, the materiality of Plaintiff's DAA. The undersigned finds that the evidence was sufficiently complete to allow the ALJ to make this determination.

In determining whether Plaintiff's DAA was material, the ALJ considered whether Plaintiff's co-occurring mental impairments would continue to be disabling if Plaintiff "stopped substance use." R. 19-21. Regarding activities of daily living, the ALJ determined that Plaintiff had only moderate restrictions at both the initial and reconsidered step three. R. 18, 20. With respect to social functioning, the ALJ found that Plaintiff had marked limitation when she was abusing drugs and alcohol, but only moderate limitations when she was not. R. 18, 20. And with respect to concentration, persistence, or pace, the ALJ likewise found that Plaintiff had marked difficulties when she was abusing drugs and alcohol, but only moderate limitations when she was not. R. 18, 20. Thus the ALJ found that Plaintiff's co-occurring mental conditions would not be disabling without substance abuse and, for each finding, the ALJ relied on Plaintiff's statements in her Function Report as well as evidence in the medical records. *See* R. 18-21(citing Exs. 4E, 4F, 18F, and "consultative psychological examination" [Ex. 6F]). The ALJ's DAA materiality finding is further supported by her discussions of the record found elsewhere in the decision, including the following notations:

- "Outside of the context of substance abuse, [Plaintiff] has not required emergent care for stabilization of her mental health. Instead [Plaintiff] has sought sporadic outpatient services, including therapy and different regimens of psychotropic medications with reported improvement." R. 15 (citing Ex. 2F);

- "[Plaintiff] acknowledged that her substance abuse caused her to miss or appear late for work." R. 15 (citing Ex. 3F);

- "[Plaintiff] admitted that her hallucinations and paranoia were 'probably drug related' and subsequently elaborated that her auditory and visual hallucinations and paranoia 'were always drug related.'" R. 15 (citing Ex. 4F);

11

- "[Plaintiff] reported she has a few good friends that she tries to see as often as possible, but that she tended to withdraw when she drinks." R. 17 (citing Exs. 18F and 21F);

- "[Plaintiff] was approved for outpatient services and was prescribed medications. When seen by her primary care provider for physical issues, she reported that she felt better concerning her depression and anxiety and denied any manic symptoms. In follow up with the North Care staff psychiatrist on August 28, 2014, [Plaintiff] reported that it had only been two weeks, but she was feeling pretty good and thought the medication was working with better mood and anxiety. She stated she was attending AA meetings and she had decreased her drinking to two to three times per week." R. 17 (citing Exs. 18F and 21F);

- "[Plaintiff] was continued on modified medications with reported improvement on November 20, 2014, at which time she reported she was feeling good and the medications had been working without any problems. She advised that she had improved motivation and was drinking less." R. 17 (citing Exs. 18F and 21F); and

- "When [Plaintiff] returned to her primary care provider at OU Internal Medicine Clinic on February 9, 2015, she reported that she completed the residential alcohol rehab program and was doing well with only one relapse." R. 17 (citing Ex. 22F).

In sum, Plaintiff has cited no authority requiring the ALJ to order a consultative examination to establish what Plaintiff's abilities are absent drug and alcohol abuse and the undersigned finds that the ALJ did not err in not ordering one. *Cf. Welch v. Colvin,* 566 F. App'x 691, 695 (10th Cir. 2014) (finding no error in the ALJ's failure to order a consultative examination where the available medical record was "sufficient to make a disability determination" and a consultative examination would not have "materially assisted" in the decision).[2]

---

[2] To the extent Plaintiff suggests that the ALJ erred merely by not expressly ruling on Plaintiff's request for a consultative examination, Pl.'s Br. at 7, the Tenth Circuit has held that an ALJ is not required to rule on such a request. *See Harlan v. Astrue*, 510 F. App'x

3. The ALJ properly considered DAA materiality with respect to Plaintiff's physical impairments

Plaintiff further argues that the ALJ's determination that DAA was material to Plaintiff's disability is not supported by substantial evidence because the ALJ did not consider whether drug and alcohol abuse was material to her physical impairments. Pl.'s Br. at 5-6. The "key factor" in the DAA policy is "whether [the SAA] would still find a claimant disabled if he or she stopped using drugs or alcohol." SSR 13-2p, 2013 WL 621536, at *4. As discussed above, the ALJ proceeded through the steps of the sequential evaluation process, finding that, including DAA, Plaintiff met Listings 12.04, 12.06, and 12.09 and, thus, was disabled. *See* discussion *supra*; R. 18-19. At this point, the ALJ began the sequential evaluation process again in order to determine the materiality of Plaintiff's DAA. *See* R. 19; SSR 13-2p, 2013 WL 621536, at *6.

As explained in SSR 13-2p, in the second application of the sequential evaluation process, if the ALJ determines that a claimant's other impairments (including severe impairments) are not disabling, the ALJ is not required to determine whether those other impairments would improve if the claimant stopped using drugs or alcohol because DAA materiality is established without the additional analysis:

> i. A second application of the sequential evaluation process may demonstrate that the claimant's other physical or mental impairment(s) is not sufficiently severe to establish disability by itself while the claimant is dependent upon

---

708, 712 (10th Cir. 2013) ("Without a statute, regulation, or case requiring an ALJ to rule on a request for a consultative examination or to provide reasons for the ALJ's ruling, the appropriate inquiry continues to be whether the ALJ met his responsibility to ensure the record was sufficiently developed to decide the issues presented at the hearing."); *see also Lundgren v. Colvin*, 512 F. App'x 875, 878-79 (10th Cir. 2013) (finding that the ALJ was not required to provide a reason for denying a consultative examination).

or abusing drugs or alcohol. In this case, deny the claim because DAA is material. The claimant would not be disabled regardless of whether the other impairment(s) would improve if he or she stopped using the substance(s) he or she is dependent upon or abusing. For example:

\*\*\*

• The other impairment(s) may be severe but not disabling by itself. For example, a claimant may have a severe back impairment that does not meet or medically equal a listing and does not preclude a claimant from doing past relevant work. We would deny the claim at step 4 of the sequential evaluation process based on the back impairment alone because DAA is material.

ii. When the claimant's other impairment(s) is not disabling by itself, adjudicators must still apply the sequential evaluation twice, first to show that the claimant is disabled considering all MDIs, including DAA, and a second time to show that the claimant would not be disabled absent DAA. However, we do not require adjudicators to determine whether the other impairment would improve if the claimant stopped using drugs or alcohol he or she is dependent upon or abusing because DAA materiality is established without this additional analysis.

SSR 13-2p, 2013 WL 621536, at \*6 (explaining the process for determining if claimant's other impairments are disabling with DAA).

The ALJ did not find that Plaintiff's physical impairments were disabling with DAA. Nor has Plaintiff argued that her physical impairments are disabling, or impose more limitations that the ALJ found, either with or without alcohol and drug abuse.[3] In other words, Plaintiff's physical impairments did not establish an initial finding of

---

[3] Plaintiff relies on *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001). Pl.'s Br. at 5-6. *Drapeau* is distinguishable, however, because in that case there was evidence that claimant's physical impairments may have met or medically equaled a Listing, yet the ALJ failed to discuss whether plaintiff met the Listing and whether plaintiff's alcohol abuse impacted her potentially disabling physical impairments. *See id.* at 1212-14. Here, Plaintiff does not identify any physical impairments that are relevant to the ALJ's materiality analysis.

disability such that the ALJ needed to determine if she "would still find [Plaintiff] disabled if . . . she stopped using drugs or alcohol." *Id.* at *4; *see also* 20 C.F.R. § 416.935(b)(2) ("In making [the DAA] determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.").

As such, because Plaintiff's physical impairments are not disabling by themselves, the ALJ was not required to evaluate DAA with respect to those physical impairments. And Plaintiff has not shown that the ALJ failed to properly consider the limitations caused by Plaintiff's physical impairments in assessing Plaintiff's non-DAA RFC. Plaintiff's argument that more was required is without merit.

   B. *The ALJ did not err in relying on the state agency physicians' opinions*

Finally, Plaintiff claims that the ALJ erred in relying on the state agency physicians' opinions because they were rendered five years prior to the ALJ's decision. Pl.'s Br. at 8. Other than asserting that such error is "obvious," Plaintiff has not alleged any prejudice or shown why reliance on the 2010 opinions caused her harm. The burden to show prejudicial error on appeal rests with Plaintiff, and Plaintiff has not met that burden. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Plaintiff's argument that the ALJ erred in relying on the state agency opinions is unavailing.

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by September 12, 2017. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 29th day of August, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE